IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

EDNA BENDER,                    *
                               *
      Plaintiff,               *      CIVIL ACTION NO. 13-00172-B
                               *
vs.                            *
                               *
CAROLYN W. COLVIN,             *
Commissioner of Social         *
Security,                      *
                               *
      Defendant.               *

## ORDER

Plaintiff, Edna Bender (hereinafter "Plaintiff"), brings this action seeking judicial review of a final decision of the Commissioner of Social Security denying her claim for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq*. On April 10, 2014, the parties consented to have the undersigned conduct any and all proceedings in this case. (Doc. 19). Thus, the action was referred to the undersigned to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. Upon careful consideration of the administrative record and the memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner be **AFFIRMED**.

## I.   Procedural History

Plaintiff      protectively      filed      an      application      for

supplemental security income on June 14, 2010. (Tr. at 236-39, 258). In her application, Plaintiff alleged that she has been disabled since May 30, 2010, due to "back problems" and "knee pain." (Id. at 236, 258, 262). Plaintiff's applications were denied and upon timely request, she was granted an administrative hearing before Administrative Law Judge Perry Martin (hereinafter "ALJ") on June 14, 2012. (Id. at 31). Plaintiff attended the hearing with her counsel and provided testimony related to her claims. (Id. at 35). A vocational expert ("VE") also appeared at the hearing and provided testimony. (Id. at 50). On July 19, 2012, the ALJ issued an unfavorable decision finding that Plaintiff is not disabled. (Id. at 25). The Appeals Council denied Plaintiff's request for review on February 8, 2013. (Id. at 1). The parties waived oral argument (Doc. 20) and agree that this case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II. Issues on Appeal

   A. Whether substantial evidence supports the ALJ's RFC assessment with respect to Plaintiff's mental limitations?

   B. Whether the ALJ erred in relying on the testimony of the vocational expert?

## III. Factual Background

Plaintiff was born on July 6, 1966, and was forty-five

years of age at the time of her administrative hearing on June 14, 2012. (Tr. 31, 35). She testified that she lives with her children, ages 20, 17, and 12. (Id. at 36). Plaintiff graduated from high school and received training in "management" and as an "accounting specialist" during two years of college. (Id. at 37, 263). In her Function Report dated July 25, 2010, Plaintiff stated that her interests include reading and talking to relatives on the telephone. (Id. at 279).

In her Disability Report dated June 30, 2010, Plaintiff reported that she worked from 1988 to 1991 at a telephone collection agency, making collection calls for utility services. (Id. at 263-64). Following a maternity leave, Plaintiff did not return to the job because of objections over her pay.[1] (Id. at 40).

On May 30, 2010, Plaintiff fell in Walmart and fractured her left patella. (Id. at 323). On June 10, 2010, Plaintiff underwent an open reduction internal fixation of the left knee. (Id. at 331). Four days later, on June 14, 2010, Plaintiff protectively filed her application for supplemental security

---

[1] Plaintiff testified that her employer offered to pay her $1.00 an hour less when she returned, and she did not think that was fair. (Tr. 40). She did not work elsewhere after that job because there were no jobs available in Selma "paying th[e] kind of money" that she made in Atlanta and because her back pain became worse after she had her baby. (Id.).

income benefits based on "back problems" and "knee pain."[2]  (Id. at 258, 262).

The following month, on July 25, 2010, Plaintiff filed a Function Report. In the Report, Plaintiff stated that she was not able to care for her children, that she could not take care of her personal needs, and that she could not do indoor or outdoor chores. (Id. at 276-77). She also stated she is able to handle her own bills, banking, and finances. (Id. at 277-78).

Plaintiff was initially denied benefits by the Agency on October 8, 2010. (Id. at 66). On November 2, 2010, Plaintiff updated her condition in her "Disability Report – Appeal," stating that her leg was stiff and painful (although she could drive), that her back pain was worse, and that she was depressed by the pain and the fact that her leg "look[ed] ugly with screws." (Id. at 302). Plaintiff reported, however, that she had not sought any mental health treatment for her depression. (Id. at 303).

Plaintiff requested and was granted an administrative hearing on June 14, 2012. (Id. at 33).  At the hearing, Plaintiff testified that she did not begin seeking treatment for

_____

[2] Three months later, in September 2010, Plaintiff likewise told consultative psychological examiner, Dr. Nina Tocci, Ph.D., that she was seeking disability based on low back pain and a broken patella. (Tr. 363).

depression until July 2011.  (Id. at 46).  Plaintiff listed her medications as Hydrocodone and Ibuprofen for knee pain.  (Id. at 264).

## IV. Analysis

### A. Standard of Review

In reviewing claims brought under the Act, this Court's role is a limited one.  The Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial evidence and 2) whether the correct legal standards were applied.[3]  Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).  A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner.  Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986).  The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence.  Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding substantial evidence is defined as "more than a scintilla, but less than a preponderance" and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion.").  In determining whether substantial

_____

[3] This Court's review of the Commissioner's application of legal principles is plenary.  Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

evidence exists, a court must view the record as a whole, taking into account evidence favorable, as well as unfavorable, to the Commissioner's decision.  Chester v. Bowen, 792 F. 2d 129, 131 (11th Cir. 1986); Short v. Apfel, 1999 U.S. Dist. LEXIS 10163, *4 (S.D. Ala. June 14, 1999).

## B.   Discussion

An individual who applies for Social Security disability benefits must prove his or her disability.  20 C.F.R. §§ 404.1512, 416.912.  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A); see also 20 C.F.R. §§ 404.1505(a), 416.905(a).  The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven his disability.[4]  20 C.F.R.

_____

[4] The claimant must first prove that he or she has not engaged in substantial gainful activity.  The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments.  If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience.  If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove an inability to perform their past relevant work.  Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986).  In evaluating whether the claimant has met this burden, the

§§ 404.1520, 416.920.

In the case *sub judice*, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since June 14, 2010, the alleged onset date, and that she has the severe impairments of status post leg injury, broken left patella, depression, and obesity. (Tr. 17). The ALJ further found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any of the listed impairments contained in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Id.).

The ALJ concluded that Plaintiff retains the residual functional capacity (hereinafter "RFC") to perform sedentary work, with the following limitations:

> [T]he claimant must elevate her left lower extremity to footstool height to relieve pain or discomfort. She is limited to

---

examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history. Id. Once a claimant meets this burden, it becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history. Sryock v. Heckler, 764 F.2d 834, 836 (11th Cir. 1985). If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled. Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999). See also Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

occasional pushing or pulling movements with
her left lower extremity. The claimant is
restricted from climb ladders, ropes or
scaffolds but can occasionally climb ramps
and stairs. She can occasionally balance
with the use of a hand held assistive
device. The claimant is prohibited from
kneeling, crouching or crawling. She can
occasionally stoop. [The claimant] must
avoid concentrated exposure to extreme heat
or cold, vibrations, humidity and wetness.
She must avoid work around dangerous
machinery and unprotected heights. The
claimant is restricted from work requiring
walking on uneven terrain or slippery
surfaces. During a regularly scheduled
workday, or the equivalent thereof, the
claimant can:
> A. Understand and remember short and
> simple instructions, but is unable to
> do so with detailed or complex
> instructions;
> B. Do simple, routine, repetitive tasks
> but is unable to do so with detailed or
> complex tasks;
> C. Have occasional and casual contact
> with the general public and co-workers.
> Accept constructive non-confrontational
> supervisor criticism;
> D. Deal with changes in the workplace,
> if introduced gradually.

(Id. at 18-19). The ALJ also determined that while Plaintiff's

medically determinable impairments could reasonably be expected

to produce the alleged symptoms, her statements concerning the

intensity, persistence and limiting effects of the alleged

symptoms were not credible to the extent that they were

inconsistent with the RFC. (Id. at 22).

Given Plaintiff's RFC, the ALJ found that Plaintiff is

incapable of performing her past work as a collection clerk.

(Id. at 23).  However, utilizing the testimony of a VE, the ALJ concluded that considering Plaintiff's residual functional capacity for a range of sedentary work, as well as her age, education and work experience, there are other jobs existing in the national economy that Plaintiff is able to perform, such as "addressing clerk," and "charge account clerk," and "napper tender," all of which are classified as sedentary and unskilled. (Id. at 24).  Thus, the ALJ concluded that Plaintiff is not disabled.  (Id.).

Also pertinent to this appeal are the findings made by the ALJ which informed his decision that Plaintiff is not disabled. In determining that Plaintiff did not meet any Listing, the ALJ made the following relevant findings:

> The severity of the claimant's mental impairment does not meet or medically equal the criteria of listing 12.04. . . . In activities of daily living the claimant has mild restriction.  In social functioning, the claimant has mild difficulties.  With regard to concentration, persistence or pace, the claimant has moderate difficulties.  As for episodes of decompensation, the claimant has experienced no episodes of decompensation, which have been extended duration. . . .  The claimant is able to handle finances, shop, spend time on the phone with friends and family, help her children with their homes (sic) and play games on the computer.

(Id. at 18).  In addition, in assessing Plaintiff's RFC, the ALJ made the following relevant findings:

At the hearing, the claimant testified she is unable to work due to residuals from a fall where she injured her left knee. She stated she fell at a discount store and subsequently underwent surgery. She testified she stays in bed six to eight hours a day and keeps her leg elevated. She contends she tries not to walk without her cane because her leg pops in the front. [The claimant] testified she is able to walk less than one hundred feet and can stand only about five to ten minutes. She has problems sitting and can sit no more than fifteen minutes and then starts to experience pain. She testified her children perform all the household chores and do the shopping. She alleges she does not go shopping by herself and uses a motorized cart. She added she is not able to do much cooking.

[The claimant] testified she started going for mental health treatment on her own. She stated she went to the emergency room the month prior to the hearing for a Demerol shot and it helped a little. She stated she goes to Cahaba Mental health as often as she can and see[s] a therapist. She stated she is scheduled to see a psychiatrist. She noted it helps her to talk to somebody and she has been trying to get them to give her something for pain. She reported she hears voices and has a hard time sleeping. She testified that she was arrested and placed in jail for something she did not do and added she and her family have been through a lot. She stated she is not able to walk and cannot keep up with her children. She is not able to ride a bike and cannot kneel down even to pray. She stated all she thinks about is her pain and getting rid of it. She is not able to get anyone to help her. She alleges she does not watch television and is in bed constantly trying to get rest.

Mr. Coplin, the claimant's representative,

argued that the claimant fell in Walmart and hurt her left knee. He stated she had a broken patella in two pieces and underwent orthopedic surgery. He reported she has stiffness in her knee and continues to have pain. He added that in July of last year, she began having mental health problems. . . .

At the request of the Office Of Disability Determinations, a consultative general medical examination was performed by Dr. E. Arnold Johnson, osteopath, on September 10, 2010. The assessments were pain in the knee joint. Dr. Johnson commented that the claimant refused x-rays requested by the Agency. He opined that the claimant should be able to perform a job that did not require much walking. There were no limitations with her arms other than she needs to use one to hold a cane. He noted she should be able to drive a car occasionally and perform office work or retail work that did not require continuous standing. . . .

Dr. Johnson wrote that he saw no objective reason that would prevent [the claimant] from working in an office or even retail if it did not require frequent walking. . . . He stated she used a cane to ambulate. He opined that objectively, he did not see any limitation with her back and she exhibited full effortless range of motion. . . .

On September 22, 2010 the claimant underwent a consultative psychological evaluation conducted by Dr. Nina Tocci, licensed psychologist, at the request of the Agency. The diagnostic impressions were pain disorder, situational stress with authority figures, chronic pain and she assigned a Global Assessment of Functioning of 55 indicating moderate symptoms. Dr. Tocci summarized stating that the claimant had some distress. [The claimant] reported constant pain in her knee and reported a

brief vocational history. The examiner noted the claimant had the ability to learn and remember moderate tasks but pain could interfere with her ability. Dr. Tocci noted good insight into the claimant's behavior and in general, appeared to be functioning within the average range of intellectual ability. Thought content was appropriate to mood and circumstance with logical thought organization (Exhibit 5F).

The claimant began treatment with the Cahaba Center for Mental Health in October 2011. Intake therapist offered a diagnosis of major depressive disorder, recurrent and moderate; mood disorder and assigned a GAF of 45 indicating serious symptoms. The claimant was first seen for counseling in January 2012. The therapist noted appearance was appropriate and mood was dysphoric. Affect was inappropriate. The claimant was referred to a day program and given contact numbers at the VA. The GAF remained 45 indicating serious symptoms. On January 26, February 16 and March 5, 2012 the claimant was a no-show for counseling. On March 12, progress notes indicated the claimant had complaints of knee pain and crying in regards to financial stressors. She reported she was arrested for marching in Jubilee. A GAF of 41 was assigned noting serious symptoms and the therapist noted the claimant was angry but was able to calm down. The claimant continued treatment with the Cahaba Center in April. [The claimant] reported she was very upset due to going through a divorce and pain in her body. The claimant reported she had no medical insurance and had been asking people for prescription drugs. The claimant was encouraged to go to the emergency room for medications. The claimant was noted to be very distracted during the session due to her medical bills. She was assigned a GAF of 38. In May, therapy notes indicated the claimant got out of an abusive relationship and reported the FBI was watching her. The

therapist noted the claimant was in a poor mood and current GAF was 41 (Exhibits 9F, 11F and 12F). . . .

I have assigned great weight to the findings and opinion of the consultative examiner, Dr. Johnson who opined the claimant was capable of performing office or retail work that did not require extensive walking or standing and I have allowed for this limitation in the residual functional capacity. He found that the claimant's limp revealed a mild to moderate limitation and range of motion was mildly to moderately limiting. Dr. Johnson wrote that he saw no objective reason that would prevent [the claimant] from working. He acknowledged that she used a cane but noted no instability. He did not see any limitation with her back as she exhibited full effortless range of motion.

With regards to the claimant's mental allegations, I find that the claimant has a mild to moderate condition. She appears to have situational depression as she is currently going through a divorce and has financial problems with no medical insurance. **While the record makes reference to her depression, the medical evidence does not show that this would cause a significant limitation in [the] claimant's ability to perform basic work activities.** The undersigned notes that the claimant has not required intensive psychotherapy treatment and has not required psychiatric hospitalization. She is currently receiving counseling. I know that the therapist has assigned a GAF of between 38 and 45 indicating serious symptoms; however, it is noted that this assessment is from a therapist and not a mental health specialist. For example, the assessment of a GAF of 38 to 45 suggests that the claimant experienced serious symptoms that included suicidal ideations or serious impairment socially or occupationally; however, during

the sessions, the therapist noted that the claimant was not suicidal or homicidal but was distraught and did not want to go to the emergency room. Therefore, I found that the assessment of a GAF in this range is unsupportive.

Instead, I have assigned great weight to the findings and opinion of the consultative psychologist Dr. Tocci whose diagnostic impressions were pain disorder and situational stress. She assigned a GAF of 55 indicating moderate symptoms. She noted good insight with thought content appropriate and logical thought organization. Dr. Tocci opined the claimant had some distress but indicated [the claimant] had the ability to learn and remember moderate tasks. I agree with her assessment and find it persuasive and consistent with the other medical evidence of record.

To give the claimant the benefit of doubt, I have limited her to sedentary work with the ability to elevate her left lower extremity to footstool height to relieve pain or discomfort. The claimant [also] has been limited to simple, repetitive routine tasks.

(Tr. at 19-23) (emphasis added). The Court now considers the foregoing in light of the record in this case and the issue on appeal.

1. **Issue**

    **Whether substantial evidence supports the ALJ's RFC assessment with respect to Plaintiff's mental limitations?**

Plaintiff argues that the ALJ's finding that she retained the RFC to perform a range of sedentary work, conditioned upon the work being limited to understanding and remembering short

14

and simple instructions; doing simple, routine, repetitive tasks; having occasional and casual contact with the general public and co-workers; accepting constructive non-confrontational supervisor criticism; and dealing with changes in the workplace, if introduced gradually (id. at 18-19), is not supported by substantial evidence.[5] (Doc. 14 at 3). Specifically, Plaintiff maintains that the ALJ erred in finding that her depression is "severe" but that it does not "cause a significant limitation in [her] ability to perform basic work activities." (Id.). The Commissioner counters that the ALJ's Mental RFC determination is fully supported by substantial medical evidence in the record. The Court has reviewed the record at length and finds that substantial evidence supports the ALJ's Mental RFC assessment.

Residual functional capacity is a measure of what Plaintiff can do despite his or her credible limitations. See 20 C.F.R. § 404.1545. Determinations of a claimant's residual functional capacity are reserved for the ALJ, and the assessment is to be based upon all the relevant evidence of a claimant's remaining ability to work despite his impairments, and must be supported

_____

[5] On appeal to this Court, Plaintiff challenges the ALJ's RFC assessment only with respect to her psychological impairment, i.e., depression, and does not contest the ALJ's RFC assessment as it relates to her physical impairments. (Doc. 13 at 3-5). Thus, the Court limits its discussion of the ALJ's RFC to Plaintiff's mental impairments.

by substantial evidence. See Beech v. Apfel, 100 F. Supp. 2d 1323, 1331 (S.D. Ala. 2000) (citing 20 C.F.R. § 404.1546 and Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)); Saunders v. Astrue, 2012 U.S. Dist. LEXIS 39571, *10, 2012 WL 997222, *4 (M.D. Ala. March 23, 2012). Once the ALJ has determined the Plaintiff's residual functional capacity, the claimant bears the burden of demonstrating that the ALJ's decision is not supported by substantial evidence. See Flynn v. Heckler, 768 F.2d 1273, 1274 (11th Cir. 1985). Plaintiff has failed to meet her burden in this case.

As the ALJ found, the record confirms that Plaintiff did not mention any mental impairment when she filed her initial application for disability in June 2010, despite the fact that the form specifically requires the claimant to list any mental conditions that limit her ability to work. (Tr. at 262). In fact, Plaintiff did not seek mental health treatment until more than one year later, in July 2011, after she was denied benefits by the Agency in October 2010. (Id. at 46, 66, 262).

Moreover, the report of consultative psychological examiner, Dr. Nina Tocci, Ph.D., supports the ALJ's finding that Plaintiff's depression does not cause "a significant limitation in [her] ability to perform basic work activities." (Id. at 22). Dr. Tocci examined Plaintiff on September 22, 2010, and Plaintiff told Dr. Tocci that she was seeking disability solely

on the basis of two health problems, her lower back and a broken patella. (Id. at 363). Dr. Tocci's notes reflect that Plaintiff had good eye contact, responsive facial expressions, and a cooperative attitude; her affect was appropriate, normal, and stable; her mood was "okay;" her orientation was normal; her concentration was focused; she demonstrated a good fund of information and comprehension; her "ability to abstract" was intact; her thought content was appropriate; she denied any change in appetite, crying spells, or sleep disturbances; she denied suicidal or homicidal ideations; she demonstrated good insight into her behavior and fair social judgment; and she appeared to be functioning in the average range of intellectual ability. (Id. at 364-65). Although Dr. Tocci noted that Plaintiff was in "some distress," she found that Plaintiff has the ability to learn and remember moderate tasks. (Id. at 365). Dr. Tocci diagnosed Plaintiff with "pain disorder" and "situational stress" and assigned her a GAF score of 55, indicating only moderate symptoms.[6] (Id.). Dr. Tocci's opinions

---

[6] GAF (Global Assessment of Functioning) is a numeric scale (0 through 100) used by mental health clinicians that measures a patient's overall level of psychological, social, and occupational functioning on a hypothetical continuum. A GAF score of 41-50 indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or serious social dysfunction (e.g., no friends, unable to keep a job). A GAF score of 51-60 suggests moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school

are based on her clinical findings and are consistent with the other record evidence; thus, the ALJ properly assigned them great weight. (Id. at 23).

Also, the ALJ's RFC determination related to Plaintiff's mental limitations is supported by the Mental RFC Assessment and Psychiatric Review Technique forms completed by State Agency medical consultant, Dr. Ellen N. Eno, Ph.D., in October 2010. (Id. at 369-86). After reviewing the medical evidence, Dr. Eno determined that Plaintiff had only mild restrictions in activities of daily living, moderate difficulties in maintaining social functioning and concentration, persistence, or pace and no episodes of decompensation. (Id. at 379). In addition, Dr. Eno found that Plaintiff was not significantly limited in her ability to understand, remember, and carry out very short and simple instructions, to concentrate for reasonable periods of time, and to respond appropriately to changes in work settings. (Id. at 383-85). Overall, Dr. Eno found that Plaintiff was only "moderately limited" in four areas, those being, her ability to understand, remember, and carry out detailed instructions, her

_____

functioning (*e.g.*, few friends, conflicts with peers or co-workers). A GAF score of 61-70 is indicative of mild symptoms (*e.g.*, depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (*e.g.*, occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships. See http://www.gafscore.com.

ability to maintain concentration for extended periods, and her ability to interact appropriately with the general public. Dr. Eno found that Plaintiff was "not significantly limited" in the remaining sixteen functional areas. (Id. at 383-84).

In addition, the evidence of Plaintiff's activities of daily living supports the ALJ's RFC assessment with respect to Plaintiff's mental limitations. Plaintiff testified that she drives and that she drove herself to her hearing. (Id. at 36-37). She also shops and handles her own banking and finances. (Id. at 45, 278). In addition, she enjoys reading as a hobby and visiting with distant relatives over the telephone. (Id. at 45, 279). This evidence further belies Plaintiff's assertion of a disabling mental impairment.

Last, the Court has reviewed the treatment notes from Cahaba Center for Mental Health where Plaintiff received treatment from October 2011 to May 2012. (Id. at 388-403). Plaintiff claims that the ALJ erred in rejecting the opinions of her therapists regarding her GAF scores. Plaintiff's treatment records at Cahaba reflect a range of GAF scores from 38 to 50, indicating serious symptoms at times. (Id. at 391-96, 402-03).

As a preliminary matter, the Court notes that the opinion of a therapist, who is not a physician, is not an acceptable medical source to establish the existence of a medical impairment. See Szilvasi v. Commissioner Soc. Sec. Admin., 555

19

F. Appx. 898, 901 (11th Cir. 2014) (citing 20 C.F.R. §
404.1513(a), (d)(1)) ("[B]ecause McCartney is a therapist, not a
physician, his opinions are not an acceptable medical source to
establish the existence of a medical impairment.").
Nonetheless, "medical sources who are not acceptable medical
sources are considered other sources and their opinions and
evidence may be used to show the severity of an impairment and
how it affects [the] ability to work[.]" Grayer v. Colvin, 2014
U.S. Dist. LEXIS 28016, *26-27, 2014 WL 852451, *9 (S.D. Ala.
Mar. 5, 2014) (citing 20 C.F.R. §§ 404.1513(d) & 416.913(d)
(internal quotation marks omitted).

In this case, the ALJ found, and the record confirms,
inconsistencies in the therapists' assignment of GAF scores and
their own contemporaneous treatment notes, as well as
inconsistencies with the other record evidence. For example, as
the ALJ found, Plaintiff's treatment notes at Cahaba on April
26, 2012, and May 21, 2012, reflect that Plaintiff was neither
suicidal nor homicidal; yet, she was assigned GAF scores of 38
and 41, respectively, indicating otherwise. [7] (Tr. 402-03).
Moreover, the GAF scores are inconsistent with the evidence of
Plaintiff's activities of daily living, as established by

---

[7] The treatment notes reflect that while Plaintiff was distraught
over her divorce, physical pain, and her financial situation,
she was not suicidal or homicidal. (Tr. 402-03).

Plaintiff, and with the opinions of consultative psychological examiner, Dr. Tocci, as set forth above. For each of these reasons, the ALJ did not err in assigning no weight to the therapists' GAF scores.

In light of the foregoing, the Court finds that the ALJ's determination that Plaintiff's mental impairments do not cause a significant limitation in her ability to perform basic work activities is based on substantial record evidence. There is no question in this case that the ALJ considered all the evidence of record and took into account Plaintiff's treatment records, the observations of medical sources concerning the severity of Plaintiff's limitations caused by her mental impairments, the credible opinions provided by medical sources about what Plaintiff still can do, the reports provided to the Agency by Plaintiff, and the Plaintiff's testimony. (Id. at 34-56). The ALJ copiously evaluated all of the foregoing evidence in reaching his determination that Plaintiff retains the residual functional capacity to perform a range of sedentary work, with the conditions and restrictions set forth above, which fully account for the limitations caused by Plaintiff's mental impairments. (Id.). Thus, the undersigned concludes that Plaintiff's assignment of error related to the ALJ's Mental RFC assessment is without merit.

2. **Issue**

**Whether the ALJ erred in relying on the testimony of the vocational expert?**

Plaintiff next argues that the ALJ erred in relying on the testimony of the vocational expert ("VE") that Plaintiff could perform other jobs, namely, addressing clerk, charge account clerk, and napper tender. Specifically, Plaintiff argues that, although the VE testified that his testimony was consistent with the Dictionary of Occupational Titles (DOT) (Tr. 53), "the DOT does not indicate [that] these jobs, or any jobs, would allow for elevating the left leg to footstool height. . . [and] would allow for the use of a cane for occasional balancing," as required by the ALJ's RFC assessment. (Doc. 13 at 6). The Commissioner counters that, while the DOT does not specifically address the postural limitations imposed by the ALJ related to footstool height elevation and the use of a cane, that does not make the VE's testimony inconsistent with the DOT. (Doc. 17 at 13). The Court has reviewed the record at length and finds Plaintiff's claim to be without merit.

As discussed above, the ALJ concluded that Plaintiff retains the RFC to perform sedentary work, conditioned upon specified limitations, including:

> [T]he claimant must elevate her left lower extremity to footstool height to relieve pain or discomfort. . . . She can occasionally balance with the use of a hand

held assistive device.

(Id. at 18).  At Plaintiff's hearing, a VE was called to testify as to jobs Plaintiff could perform with these and her other specified limitations.  The VE testified that, considering an individual of Plaintiff's age, education, and work experience, with all of the limitations contained in the RFC (as set forth above), there are jobs existing in the regional and national economies that such an individual could perform, in numbers the ALJ found to be significant.  (Id. at 51-52).  The VE listed addressing clerk, charge account clerk, and napper tender, all of which are sedentary and unskilled.  (Id. at 52-53).  The ALJ asked the VE if his opinion was consistent with the Dictionary of Occupational Titles (DOT), and the VE answered affirmatively that it was consistent.[8]  (Id. at 53).

---

[8] The precise hypothetical posed to the VE by the ALJ was as follows:

> I'd like you to assume an individual of [claimant's] age, education, and work experience, could perform work at the sedentary exertional level with the following limitations: elevate left lower extremity to foot stool height at will to relieve pain or discomfort; occasional pushing or pulling with left lower extremity; no climbing ladders, ropes, scaffolds, occasional climbing of ramps and stairs, occasional balancing with use of a handheld assistive device, no kneeling, crouching, crawling, occasional stooping, avoid concentrated exposure to extreme heat and cold, concentrated exposure to

As stated, Plaintiff argues that because the DOT does not specifically address the ALJ's postural limitations related to elevating her left lower extremity to footstool height and the use of a cane as an assistive device, there is a conflict between the DOT and the VE's testimony.  Contrary to Plaintiff's argument, however, the fact that the DOT does not address the

> vibration, concentrated exposure to humidity and wetness, avoid all hazardous machinery, unprotected heights, no work requiring walking on uneven terrain or on slippery [surfaces], also during a regular schedule workday [INAUDIBLE] understand and remember short and simple instructions, but unable to do so in detailed [INAUDIBLE], and do simple, routine, repetitive tasks, unable to do [INAUDIBLE] and complex tasks, contact with the general public not be a usual job duty except constructive, non confrontational supervisory criticism, and can deal with changes in the workplace instituted occasionally gradually. . . . Could such a person with those limitations perform any work in the national or regional economy?

(Tr. 51-52).  The VE responded:

> Yes, there would be jobs a person could do, I would think, in an office setting of an addressing clerk: DOT Number is 209.587-010; it's unskilled and sedentary work;. . . . Another possibility would be a charge account clerk; DOT Number 205.367-014; that's unskilled sedentary work; . . . . The job as a Napper Tender would be an appropriate job, the DOT number is 585.665-010; that's unskilled and sedentary work. . . .

(Id. at 52-53).

postural limitations at issue does not suggest the existence of a conflict between the DOT and the VE's testimony; rather, it indicates the absence of a conflict. See Thomas v. Colvin, 2014 WL 2611720, *14 (D.S.C. June 11, 2014) ("[Plaintiff] concedes that the DOT 'does not address the extent of ongoing interaction with the public in its description of the requirements of the occupations.' . . . Because the DOT does not address whether a job requires ongoing interaction with the public, there is no apparent unresolved conflict between the VE's testimony and the DOT on this issue.") (citing Bilodeau v. Colvin, 2013 WL 3880132, *6 (D.S.C. July 26, 2013) (finding that where the plaintiff conceded the DOT did not address limitations in public interaction, there was no apparent conflict to resolve)).

Moreover, SSR 00-4p requires only that the ALJ resolve an "*apparent* unresolved conflict" between the DOT and the VE's testimony. At the administrative hearing, the ALJ asked the VE, "has your testimony been consistent with the Dictionary of Occupational Titles," and the VE replied "[i]t has been." (Tr. 53). At no time did Plaintiff's counsel raise any objection to the VE's testimony or his qualifications, nor did he suggest a conflict between the VE's testimony and the DOT. Thus, there was no apparent conflict for the ALJ to resolve. See Leigh v. Commissioner of Social Security, 496 F. Appx. 973, 975 (11th Cir. 2012) (unpublished) (finding no apparent inconsistency

between the VE's opinion and the DOT where "the ALJ asked the VE if there were any inconsistencies between his opinion and the DOT . . .[;] the VE responded that there were not[;]" and the claimant "did not offer any evidence controverting the VE's opinion, nor did she object to the opinion. Even assuming that there was an inconsistency between the VE's opinion and the DOT, the ALJ did not err in relying on the VE's opinion to determine that [the claimant] was not disabled.").

"If no apparent conflict between the VE's testimony and the DOT are raised at the hearing, the ALJ is not required to address SSR 00-4p." Riddle v. Colvin, 2013 U.S. Dist. LEXIS 178621, *18, 2013 WL 6772419, *7 (M.D. Ala. 2013) (citing Gibson v. Astrue, 2010 WL 3655857, *15 (N.D. Ga. 2010)). Where, as here, Plaintiff's counsel did not identify any conflicts, "the ALJ need not independently corroborate the VE's testimony and should be able to rely on such testimony where no apparent conflict exists with the DOT." Id. (citing Brijbag v. Astrue, 2008 WL 276038, *2 (M.D. Fla. 2008) (citing cases); see also Dickson v. Commissioner of Soc. Sec., 2014 WL 582885, *5 (M.D. Fla. Feb. 13, 2014) ("SSR 00-4p does not require an ALJ to independently investigate whether a conflict exists[;] it simply requires that that ALJ ask the vocational expert if a conflict does exist, and if a conflict exists, then the ALJ must explain and resolve the conflict.").

Last, the Court finds the ALJ did not err in relying on the VE's testimony because, "in the Eleventh Circuit, the VE's testimony trumps any inconsistent provisions of the DOT." Riddle, 2013 U.S. Dist. LEXIS 178621, *19, 2013 WL 6772419, *7 (M.D. Ala. 2013) (citing Jones v. Apfel, 190 F.3d 1224, 1229-30 (11th Cir. 1994) ("[W]hen the VE's testimony conflicts with the DOT, the VE's testimony 'trumps' the DOT."). Thus, for each of these reasons, Plaintiff's claim must fail.

In sum, "[i]n order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments." Neefe v. Commissioner of Soc. Sec., 531 Fed. Appx. 1006, 1007 (11th Cir. 2013) (unpublished) (quoting Winschel v. Commissioner of Soc. Sec., 631 F.3d 1176, 1180 (11th Cir. 2011) (internal quotation marks omitted)). Plaintiff does not dispute that the ALJ's hypothetical correctly set forth all of her limitations. Therefore, the VE's response to that question, which created no apparent conflict with the DOT, constituted substantial evidence in support of the ALJ's finding.

## V.    Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, it is hereby **ORDERED** that the decision of the

Commissioner of Social Security denying Plaintiff's claim for supplemental security income be **AFFIRMED.**

**DONE** this **23rd** day of **September, 2014.**

**/s/ SONJA F. BIVINS**
**UNITED STATES MAGISTRATE JUDGE**